**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**NORTHERN DIVISION**
**AT COVINGTON**

**CIVIL ACTION NO. 20-22-DLB-EBA**

**SHIRLEY VINER and STANLEY VINER**                                          **PLAINTIFFS**


**v.**                              **MEMORANDUM OPINION AND ORDER**


**UNITED STATES OF AMERICA**                                          **DEFENDANT**

* * * * * * * * * * *

## I.      INTRODUCTION

This matter is before the Court upon two motions filed by the United States: a Motion for Summary Judgment (Doc. # 44), and a Motion to Exclude the Expert Testimony of Larry Dehus (Doc. # 45).  Both motions have been fully briefed (Docs. # 47, 48, 51, and 52), and are thus ripe for the Court's review.  The Court has accordingly reviewed the motions and associated filings, and for the reasons stated herein, the United States' Motion for Summary Judgment (Doc. # 44) is **GRANTED**, and the United States' Motion to Exclude (Doc. # 45) is **DENIED AS MOOT**.

## II.     FACTUAL AND PROCEDURAL BACKGROUND

This is a Federal Tort Claims Act ("FTCA") suit brought by Shirley and Stanley Viner, both of Florida, against the United States for alleged negligence committed by the Transportation Security Agency ("TSA") at Cincinnati/Northern Kentucky International Airport ("CVG").  (*See* Doc. # 1).  The facts of this case are simple and straightforward. On September 6, 2015, Mr. and Mrs. Viner were waiting in line at the TSA security checkpoint at CVG.  (*Id.* ¶ 10).  While they were moving through the line, Mrs. Viner was

directed by a TSA agent "to step around the edge of a booth," and upon doing so, Mrs. Viner tripped over the base of a stanchion[1] which was positioned in front of the booth. (*Id.* ¶¶ 11-12).  After tripping on the stanchion, Mrs. Viner "took a couple of steps but could not regain her balance and fell face first, injuring her face, her left arm and left shoulder." (*Id.* ¶ 13).  Mrs. Viner suffered a fractured humerus and required stitches on her face, in addition to dental problems and emotional damages.  (*Id.* ¶ 14).

Two years after the incident, Mr. and Mrs. Viner filed administrative claims for tort damages against the TSA in accordance with the FTCA's procedural requirements.  (*Id.* ¶ 6).  This action followed in February 2020.  (*Id.* ¶ 1).  More specifically, the lawsuit contains one count alleging negligence against the United States on behalf of Mrs. Viner (*id.* ¶ 16), and a second count for loss of consortium on behalf of Mr. Viner.  (*Id.* ¶ 20). Since the lawsuit's filing, the parties have conducted and concluded discovery, and the United States moved for summary judgment in May 2022.  (Doc. # 44).  But unfortunately, before the Court could adjudicate that motion, Mrs. Viner passed away, as evidenced by a Suggestion of Death filed by her counsel.  (Doc. # 53).  In light of Mrs. Viner's death, the parties filed status reports indicating that Mr. Viner does not intend to open an estate on Mrs. Viner's behalf.  (Docs. # 56 and 57).  Most consequentially, the parties also agreed that Mr. Viner had not moved to substitute his wife as a party in the lawsuit, and that the time for doing so had passed under the Federal Rules of Civil Procedure.  (Docs. # 56 and 57).

---

[1]     Stanchions are vertical posts, usually part of a support structure, connected by retractable belts.  They are used in many TSA checkpoint areas as a means of guiding the flow of foot traffic through the checkpoint area.

III.     **ANALYSIS**

A.     **Suggestion of Death of Mrs. Viner (Doc. # 53)**

Rule 25 of the Federal Rules of Civil Procedure provides that:

If a party dies and the claim is not extinguished, the court may order substitution of the proper party.  A motion for substitution may be made by any party or by the decedent's successor or representative.  If the motion is not made within 90 days after service of a statement noting the death, the action by or against the decedent must be dismissed.

Fed. R. Civ. P. 25(a)(1).  In other words, in the event of a party's death, if a claim survives the death, a motion for substitution must be made by the decedent party's successor or representative.  *Id.*  If no such motion is made, the decedent party (and her claims) "must be dismissed."  *Id.*  Thus, to determine the status of Mrs. Viner's negligence claim, the Court must assess (1) whether her claim survived her death, and (2) whether a motion to substitute was filed.

Whether a claim is extinguished is determined by the substantive law of the forum state.  *See Robertson v. Wegmann*, 436 U.S. 584, 587 n.3 (1991).  In Kentucky, "[n]o right of action for personal injury . . . shall cease or die with the person being injured," with limited exceptions.  Ky. Rev. Stat. Ann. § 411.140.  Mrs. Viner's negligence claim, being rooted in personal injury, is covered by the Kentucky statute and thus survived her death. Subsequently, under Rule 25, a motion for substitution was required within 90 days after the filing of the Suggestion of Death.  Fed. R. Civ. P. 25(a)(1).  As previously stated and as noted by the parties, no motion to substitute was filed in this case.  (Docs. # 56 and 57).  Count I of the Complaint will accordingly be dismissed.

However, Rule 25 also provides that if multiple parties are involved on one side of an action, the case "proceeds in favor of or against the remaining parties."  Fed. R. Civ.

3

P. 25(a)(2).  In other words, the unsubstituted death of one plaintiff only causes dismissal of the claims made by that plaintiff.  If other living plaintiffs remain, their claims may proceed.  Here, Mr. Viner has not died, and his claim for loss of consortium thus remains pending.  *E.g., Price v. Ethicon, Inc.*, No. 2:14-CV-20783, 2020 WL 6568858, at *2-3 (S.D. W. Va. Nov. 9, 2020) (applying Rule 25 to a personal injury action where one plaintiff died and was not substituted, thus proceeding only with spouse co-plaintiff's loss of consortium claim).

### B.    Motion for Summary Judgment (Doc. # 44)

As a threshold matter, the Court notes that even though this is an FTCA claim, Kentucky substantive law nonetheless applies, as the FTCA provides that liability is assessed "in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b);  *see also Premo v. United States*, 599 F.3d 540, 545 (6th Cir. 2010). Under Kentucky law, loss of consortium is a statutory claim which allows "a wife or husband to recover damages against a third person for loss of consortium, resulting from a negligent or wrongful act of [a] third person."  Ky. Rev. Stat. Ann. § 411.145.  A loss of consortium claim "can continue even when the injured spouse . . . otherwise has been excluded from an action," such as after a Rule 25 dismissal.  *Martin v. Ohio Cnty. Hosp. Corp.*, 295 S.W.3d 104, 109 (Ky. 2009).

Nonetheless, loss of consortium is "a wholly derivative claim that merely provides access to an additional category of damages if a defendant's liability can be established under another legal theory."  *Mullins v. Marathon Petroleum Co.*, No. 0:12-CV-108-HRW, 2013 WL 2285140, at *4 (E.D. Ky. May 22, 2013) (citing *Rehm v. Ford Motor Co.*, 365 S.W.3d 570, 577 (Ky. Ct. App. 2011)).  In other words, liability for loss of consortium turns

on liability for the underlying wrongful act. *Id*.; *see also, e.g., Godbey v. Univ. Hosp.*, 975 S.W.2d 104, 106 (Ky. Ct. App. 1998) (noting that on-the-merits dismissal of an underlying tort claim was fatal to loss of consortium claim). Thus, to evaluate Mr. Viner's loss of consortium claim, the Court will accordingly evaluate the underlying negligence claim brought by Mrs. Viner. Even though that claim itself has been dismissed from the action, Mr. Viner must still prove the United States' negligence to prevail on his loss of consortium claim, and the parties have briefed that issue on summary judgment.

### 1.    Standard of Review

A motion for summary judgment should be granted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute as to a material fact exists where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Thus, no genuine dispute exists where *no* reasonable jury could return a verdict for the nonmoving party. *See Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 349 (6th Cir. 1998). The moving party bears the burden of showing the absence of a genuine issue of material fact. *Sigler v. Am. Honda Motor Co.*, 532 F.3d 469, 483 (6th Cir. 2008). After that burden is met, to avoid the entry of summary judgment, the non-moving party must produce "specific facts" showing a "genuine issue" necessitating the matter moving forward to trial. *Celotex Corp v. Catrett*, 477 U.S. 317, 324 (1986). However, where applicable, the non-moving party's rebuttal burden is light, as the Court must draw all reasonable inferences in favor of the non-moving party. *Matsushita Elec. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### 2.   Analysis

In its Motion for Summary Judgment, the United States argues that the Viners' claims must fail because (1) the TSA had no duty of care to Mrs. Viner, (2) and that in the alternative, even if it did, an exception would apply to preclude it from liability for Mrs. Viner's injuries.   (Doc. # 44).   In response, the Viners have argued (1) that safer alternatives exist as to the design of stanchions (Doc. # 48 at 4); (2) that the TSA is, in fact, in control of airport screening areas (*id.* at 6); (3) that the TSA had a duty to prevent foreseeable injuries (*id.* at 8); and (4) that they have established a prima facie negligence case (*id.* at 17).   Upon reviewing the filings and relevant law, the Court will grant summary judgment in favor of the United States because the Viners have not presented any evidence to show that the TSA had ownership or control of the stanchion over which Mrs. Viner tripped and fell.

In Kentucky, "[a]ctionable negligence consists of (1) a duty, (2) a breach of that duty, and (3) consequent injury. The absence of any one of the three elements is fatal to the claim."  *Brewster v. Colgate-Palmolive Co.*, 279 S.W.3d 142, 148 n.16 (Ky. 2009) (quoting *Sparks v. Re/Max Allstar Realty, Inc.*, 55 S.W.3d 343, 348 (Ky. Ct. App. 2000)). The question "of whether a duty exists is a legal question for the court" which requires the Court to examine "whether a plaintiff's interests are entitled to legal protection against *the defendant's* conduct."  *Shelton v. Ky. Easter Seals Soc'y, Inc.*, 413 S.W.3d 901, 908 (Ky. 2013) (emphasis added).  The specific defendant's conduct is relevant because generally, "duty is outlined by the relationship between the parties."  *Id.*

However, regardless of the parties' relationship, Kentucky law also recognizes a "universal duty [of care] owed by all to all."  *Dick's Sporting Goods, Inc. v. Webb*, 413

S.W.3d 891, 897 (Ky. 2013).  The universal duty of care, as an "overarching duty" to more delineated duty-bound relationships, is equally applicable in premises liability cases.  *Id.* Thus, when a court is presented with a premises liability case under Kentucky law, an analysis of both duties is appropriate.  *See Greer v. Kaminkow*, 401 F. Supp. 3d 762, 773 (E.D. Ky. 2019).

First, a general premises liability analysis demonstrates that TSA owed no duty of care to Mrs. Viner, supporting the granting of summary judgment.  In Kentucky, "a landowner owes a duty of reasonable care to those individuals invited onto the landowner's property, and the landowner must inform invitees of or eliminate any unreasonable dangers that would otherwise be undetected."  *Shelton*, 413 S.W.3d at 909. The same principle also applies to "a land possessor," or one who exercises some degree of control over land.  *Greer*, 401 F. Supp. 3d at 774-75.  In *Greer*, the Court discussed at length how the law is unclear with respect to whether a land "owner" and "possessor" are considered one and the same, but nonetheless concluded that the inquiry turns on control.  *Id.*  The same is true here – as it is undisputed that the United States does not own CVG – thus, the relevant question is whether the United States controls the area in which Mrs. Viner fell to a degree sufficient enough to be considered a "possessor."  On this record, the answer is no.

Simply put plainly, the Viners have presented no evidence to suggest that the TSA controls the area in which Mrs. Viner fell.  Instead, they have cited case law to suggest that "federal law makes it clear that the TSA checkpoint and screening area are controlled by TSA, and not the owner of the airport" as a matter of law, seemingly irrespective of the facts at hand.  (Doc. # 48 at 7).  While the cases they cite do suggest that the TSA has

control over activities that occur within screening areas, they are easily distinguishable from this case. In *Muir v. TSA*, the plaintiff was physically injured at the hands of TSA agents *during* a security screening which contained a body scan and a pat down. No. 1:20-CV-1280, 2021 WL 231733, at *1 (C.D. Ill. Jan. 22, 2021). In the section of that case cited as an apparent smoking gun by the Viners, the court discussed that an airline could not be held responsible for the TSA agents' activities within the TSA screening area. *Id.* at *8. While the law and *Muir* make clear that the TSA controls its agents and their security screenings, the law and *Muir* do not address whether the TSA controls the *physical premises* in which its agents conduct their security screenings, at issue in this case. In fact, other cases suggest that the TSA does not control those physical premises.

In *Groce v. United States*, a plaintiff experienced a slip-and-fall injury within a TSA screening area at John F. Kennedy Airport. No. 07-CV-5239, 2011 WL 5024273, at *2-3 (E.D.N.Y. Oct. 19, 2011). The *Groce* court reasoned that "TSA employees . . . bore no responsibility for the maintenance of the area," and were thus not liable for the plaintiff's injuries. In other words, the Viners are incorrect that as a matter of federal law, TSA agents always control their work areas. Just as is the case in any other premises liability matter, the TSA's control depends on the facts in question, and importantly, here, the Viners have not provided any facts to show that the TSA was in control of the physical premises where Mrs. Viner fell. Accordingly, no reasonable jury could find for the Viners on a general premises liability theory under Kentucky law.

Second, Kentucky's "universal duty of care" provides that "every person owes a duty to every other person to exercise ordinary care in his activities to prevent foreseeable injury." *Dick's Sporting Goods*, 413 S.W.3d at 897. While foreseeability is usually a jury

question, *Shelton*, 413 S.W.3d at 904, foreclosing on foreseeability is appropriate where "no reasonable person could differ on the matter."   *Id*. at 913.   But as mentioned in *Greer*, when a defendant's "own conduct has not created a risk of harm," foreseeability cannot and does not exist.   401 F. Supp. 3d at 762 (quoting *Grand Aerie Fraternal Order of Eagles v. Carneyhan*, 169 S.W.3d 840, 849 (Ky. 2008)).   Thus, because Kentucky law does not impose a duty "to control the conduct of a third person to prevent him from causing harm to another," the universal duty inquiry also requires a showing of facts to demonstrate actionable conduct from the specific named defendant.   *Carneyhan*, 169 S.W.3d at 849.   As noted by the Kentucky Supreme Court in *Shelton*, this inquiry often overlaps with a finding of breach, as without a breach of reasonable care, the universal duty is seldom invoked.   413 S.W.3d at 908.

For example, in *Greer*, the plaintiff cleaned homes owned by the defendants, and was directed by the defendants to clean a specific home one day.   401 F. Supp. 3d at 767-68.   The defendants had a "unique and risk-creating practice" of throwing their trash into their garage, creating a "heap large enough to block any other use of the garage." *Id*. at 779.   The plaintiff, their employee, was in her late 60s, was sent to "deal with the unorganized detritus."   *Id*. at 780.   While making several trips moving trash bags to the curb, she tripped on a box in the driveway and fell.   *Id*.   The *Greer* court reasoned that the defendants accordingly had "situational knowledge" of the boxes and trash in the garage, placed there by their own tossing.   *Id*. at 777.   Thus, in asking their elderly employee to move the boxes and trash, they created a clearly foreseeable risk of harm to the plaintiff, invoking their "universal duty of care" under Kentucky law.

Here, the TSA agents engaged in no conduct to create a foreseeable risk of harm to Mrs. Viner, and the Viners have again raised no evidence to suggest such conduct.  As previously stated, the United States has provided an affidavit stating that the TSA and its agents have no control over the placement of stanchions at CVG.  No facts exist in this case like those in *Greer* to suggest that the TSA had "situational knowledge" of a foreseeable risk to Mrs. Viner – let alone with specific respect to the placement of stanchions.    Thus, in the lack of evidence showing that the TSA's "own conduct . . . created a risk of harm," no reasonable jury could find that the TSA owed and breached a universal duty of care with respect to Mrs. Viner.  *Greer*, 401 F. Supp. 3d at 762.

### C.    Motion to Exclude an Expert Report (Doc. # 45)

The United States has also filed a *Daubert* motion to exclude the opinions of an expert retained by the Viners.  (Doc. # 45).  The expert, Larry Dehus, would have testified on the design and usage of the stanchions in question at CVG.  The Court did not use Mr. Dehus' opinions in adjudicating the summary judgment motion, and in light of that motion being granted, the Motion to Exclude (Doc. # 45) will be **DENIED AS MOOT.**

## IV.    CONCLUSION

This case is a relatively simple premises liability matter, stemming from an unfortunate incident which resulted in injuries to Mrs. Viner at the Cincinnati / Northern Kentucky International Airport.  While Kentucky law on premises liability is complex, as illustrated by the lengthy analysis contained within *Greer*, 401 F. Supp. 3d at 762, this case is much simpler than *Greer*, especially considering the summary judgment standard and the straightforward evidence presented (and not presented) by both parties.  The United States has argued that the TSA had no duty of care to Mrs. Viner because the

TSA does not own the airport and does not control where stanchions are placed. (Doc. # 44-1 at 3). In support of that argument, the United States provided an affidavit by a TSA official stating the same. (Doc. # 44-2). Taken as true, the United States' argument precludes a finding of negligence on behalf of the TSA because it shows an affirmative lack of a duty of care. The Viners have provided no evidence to rebut that argument, and more importantly, the Viners have provided no evidence to support the converse – that the TSA *did* owe the Viners a duty of care. While their Response is replete with lengthy quotations to case law, it nonetheless demonstrates a lack of specific evidence in this specific case to raise a genuine dispute of fact with respect to the CVG TSA's control over the stanchion that caused Mrs. Viner's accident. In that absence, it is clear that no reasonable jury could find for the Viners, and summary judgment is thus proper.

Accordingly, **IT IS ORDERED** that:

(1)     The United States' Motion for Summary Judgment (Doc. # 44) is **GRANTED;**

(2)     The United States' Motion to Exclude (Doc. # 45) is **DENIED AS MOOT**; and

(3)     An according **Judgment** is filed contemporaneously herewith.

This 9th day of December, 2022.



Signed By:

*David L. Bunning*

**United States District Judge**

K:\DATA\ORDERS\Cov2020\20-22 MOO re MSJ.docx